Marvin, J.
This is a proceeding in error seeking to reverse an order of the court of common pleas dissolving a temporary injunction which had been allowed in that court.
The plaintiffs and defendants in this proceeding were plaintiffs and defendants respectively in the court below.
The facts were found by the court, and are as follows:
“1. “The court finds that on March 31st, 1901, the plaintiff and defendant entered into a written contract of lease where-' by the defendant leased to the plaintiff a fixed amount of floor space, together with an average of 15 horse power for ten hours per day for the sum of seventy dollars ($70.00) per month, payable on the first of each month in advance.
“2: The court finds in pursuance and under the terms of the contract of lease,1 Sipe & Sigler established a plant for the manufacture of hard rubber, and installed its machinery in the premises thus leased for that purpose, and from its part •of the premises, for the purpose of securing the power contracted for, carried a belt from its machinery into the1 premises iof Bartlett & Palmer, reserved in the lease, and there placed it •upon the pulley of the main shaft of said Bartlett & Palmer, •which pulley was there placed by Sipe & Sigler. After operating for a short time, it was found that the belt, thus conveying power, jumped from the pulley and thus stopped the machinery, not only of the plaintiff and defendant in this case, but other power takers in other parts' of defendant’s premises.
“3. And thereafter, by consent between the parties, anoth *232 er pulley was placed upon the shaft by Sipe & Sigler upon the said shaft of Bartlett & Palmer, and another belt extending therefrom into the premises of Sipe & Sigler for transmitting-additional power.
“4. The court further finds from the testimony that after the operating of their plant by Sipe & Sigler through and by the power thus furnished by the defendant, Bartlett & Palmer, by reason of the two belts adjusted by consent, that" a controversy arose between the parties as to whether or not Bartlett & Palmer were furnishing more, and Sipe & Sigler receiving more power than was called for by the contract, or the plaintiffs were entitled to under the contract of leasehereinbefore found to exist.
“5. The court further finds from the testimony that during the contention between the parties, Bartlett &Palmer, the defendants, secured some expert tests as to the amount of power, that was being conveyed and furnished to the plaintiff, and' as a result thereof concluded that it, the defendant, was furnishing more power than the contract called for, and determined not to. continue to so furnish the power, and as a result of such determination loosened the set-screws on one of the pulleys and belts established, thus preventing the further-transmission of power through one of the pulleys and belts. .The court further finds that the plaintiff remonstrated with-defendant for thus interfering, and defendant stated to the-■plaintiff that it had determined not to and would not permit the set-screws to be tightened on the pulley thus loosened by it, and would not furnish the plaintiff power in addition to the amount furnished and transmitted to it by one belt.
“6 The court finds that thereupon plaintiff secured a-temporary injunction against the defendant, setting out in-the petition for said injunction the lease existing between the parties, the description of the manner in which power had' theretofore been transmitted, the loosening of said set-screws,, and the refusal of the defendant to permit the same to be readjusted arid alleging therein that the defendant threatened' to cut the belt of plaintiff runing over said pulleys, threatened’ to loosen, and remove from the shaft in defendant’s engine-room the two pulleys placed on the shaft by plaintiff, and threat *233 ■ened to shut off the power altogether from the plaintiff in violation of its contract, alleging irreparable injury, that it had no remedy at law, asked for and obtained a restraining order against the defendant from in any manner interfering with the pulley or pulleys on the shaft described, or its interfering with the plaintiff repairing said pulleys, and restraining the defendant from cutting the belt or belts running from said pulleys, or from shutting off the power from plaintiff, and asking on final hearing for a perpetual injunction. A temporary restraining order was by the court allowed.
“7. The court further finds from the testimony that the plaintiff thereupon entered the premises of the defendant, re' adjusted tne set-screws binding said pulley ta the'shaft within the premises of the defendant, restoring the situation as it had existed prior to the loosening of the set-screws by the defendant, Bartlett & Palmer. Thereupon defendant filed a motion to dissolve the restraining order as granted, alleging among other things in their motion that the petition did not state facts sufficient to entitle the plaintiff to the equitable interference of the court by injunction, and that the-defendant had an adequate remedy at law, and the injury, if any, should be sustained, was measurable and not irremediable in character.”
The findings of law are also embodied in the journal entry..
The question presented here, is, whether upon the facts astound, the result in the court of common pleas was in accord- . anee -with the law which should have been applied to the case.
It will be noticed that there is no finding that the defendants were not furnishing to the plaintiffs all the power which, under the contract between them, they had agreed to furnish. Whether the pulley which was loosened by the defendants so-as to render it inoperative, was the one first put upon the shaft by the plaintiffs, or the one put on at a later time, does not ap-r pear- It does appear that the defendants claimed that by the use of the two pulleys more power was being supplied to the plaintiffs than they were entitled to under their contract. The pulleys weie upon the shaft of the defendants. - The plaintiffs sought so to tighten the pulley which the defendants had loosened, as to cause it to be effectual to convey power to the ma *234 chiner.y of the plaintiffs. Certainly, without the existence • of the fact that by the device left in operation the plaintiffs were not receiving the amount of power to which under the contract they were entitled, they were not entitled to the injunction which was dissolved by the order complained of, and, • as no such fact is found, it seems difficult to understand what principle was violated by the court in dissolving the injunction. However the argument made here, was chiefly upon •other grounds.
The plaintiffs assuming that the defendants were not fur- ■ nishing the power which they had undertaken to furnish, urged that the only adequate remedy for it, is by injunction such as was prayed for in the original petition, and they rely upon the • doctrine that equity may be resorted to wherever there is no adequate remedy at law. Numerous authorities are cited in support of this proposition; among them, Irwin v. Lewis, 50 Miss. 363.
The 3rd clause of .the syllabus in this case reads:
“The test of the right to equitable interposition is not merely ■■that there is a remedy at law, but that that remedy must be ade- • quate, and as practical and efficient to the ends of justice, as the remedy in equity.”
The action in this case was by a party whose homestead which he claimed was exempt, was about to be sold upon exe- • cution by the sheriff; and it was held that there was no adequate íemedy at law, and that injunction was the proper pro-ceeding. In the opinion, on page 369, the court uses this language:
“What damages could a court of law award against a sheriff and the judgment creditor who prompted his act, for 'the levy upon and sale of land? The sheriff does not break •the close; he does not intrude upon the occupancy; his deed is effectual to pass the title. It can hardly be áffirmed that mors than nominal damages have been sustained. Yet it might be true, that the existence of his deed would impair seriously the sale value of the property, and might in after ‘years, when evidence has faded, or grown dim, put in jeopar''dy the complainant’s title.”
Clearly here was a case where there could be fio rémedy in ■ any wise adequate except by injunction.
*235 To the same effect is Butler v. Burleson, 16 Vt., 176. This-was a proceeding by injunction to restrain the defendant from practicing medicine within twenty miles of the town of Berkshire, in violation of his contract with the plaintiff, and that court held that this negative covenant might be enforced, by injunction.
See also Manhattan Manufacturing Co. v. New Jersey Stockyard Co., 23 N. J. Eq., 161. In this case the plaintiffs had a contract with the defendants, by which the defendants-were to furnish to the plaintiffs all the blood and animal matter from its slaughtering plant; and, in violation of the agreement, the defendants were permitting others to remove matter so contracted for to the plaintiffs. It was held that the-proper remedy was by injunction. On page 166 of the opinion the court say: the injunction is not mandatory, it is not. for an order that material be delivered to plaintiff, but only to prevent others from taking such material; and, again:
“The value of the blood is no measure of the injury, and it is haidly possible to compute the damages which the injury may occasion. And redress at law could only be obtained by a continued series of suits through the twenty or forty years of complainant’s term.”
See also Rogers v. Manufacturing Co., 20 Conn., 356, and Memphis (City) v. Dean, 75 U. S., (8 Wallace), 74.
In its findings of law, the court of common pleas stated that the principle announced by the Supreme Court of Ohio in Steinau v. Gas Co., 48 Ohio St., 324, was decisive of this case. In that case, a contract had been made between the plaintiff and defendant, by which the gas company was to-furnish at a fixed price, all the gas for illumination of the premises of Steinau for a given time, and Steinau agreed that he would use no means of illuminating his premises within that time except gas furnished by the gas company. Within the time fixed by the contract Steinau arranged for the illumination of his premises by electricity, ánd the gas company brought its suit to enjoin him from so making use of electricity for illuminating his premises. The circuit court held with the gas company. Cincinnati Gas L. & C. Co., v. Steinau, 2 C. C., 286. The Supreme Court reversed the *236 judgment of the circuit court, and, in the opinion of Judge Spear, this language from Pomeroy Contr. section 163, is quoted:
“The peculiarly distinctive feature of the equitable doctrine is, that the remedial right to a specific performance must be .mutual. If, therefore, from the nature or from the contract itself, from the relations of the parties, from the personal incapacity of one of them, or from any other cause, the agreement devolves no obligation at all upon one of the parties, or if it cannot be specifically enforced against him, then and for .that reason, he is not in general entitled to the remedy of a specific performance against his adversary party, although otherwise there may be no obstacle arising, either from the terms • of the contract or from his personal status and relations, to .an enforcement of the relief against the latter individually.”
Again the court quotes from section 165, Pomeroy on Contracts :
“It is a familiar doctrine that if the right to the specific performance of a contract exists at all, it must be mutual; the remedy must be alike attainable by both parties to the agreement.”
The opinion then contains this quotation from the language used in the opinion of the circuit court in the same case:
“Where there is a clear and continuing breach of a negative ■covenant in a contract, and where an injunction against the breach of it will do substantial justice between the parties by obliging the defendant to carry out his contract or lose the benefit of a breach of it, and the remedy at law is not adequate, or the damages for such a breach are not susceptible of proper assessment by a jury, a court of equity may properly restrain the defendant from such a breach, though the court might not be able to enforce a complete specific performance of the contract against the other party.”
In reference to this language, the court say:
“There are cases both in England and in this country, which sustain the holding of the circuit court.
“However, after a somewhat careful examination of the numerous cases cited by counsel, and many others, we are -"inclined to the conclusion that the general doctrine laid down *237 by Mr. Pomeroy is sustained by the apparent weight of authority,”
Walter C. Ong, for Plaintiff in Error.
Ñewton D. Baker, for Defendant in Error.
Applying the principle announced in the quotations from Pomeroy, to the case at bar, it is difficult to understand how the injunction prayed for by plaintiffs can be sustained. Surely no injunction could compel the plaintiffs to receive the power to be furnished.
Again,- the effect of an injunction, such as prayed for by the plaintiffs, would be to undertake to enforce by injunction an affirmative covenant of the. contract for the rendition of service, that is what is 'sought. We know of no case where any such relief has been granted. Indeed, if the injunction had been sustained by the court, the remedy of the plaintiffs would have been wholly inadequate to accomplish the purpose sought, for it would have profited them nothing to refasten the pulley upon the shaft, unless thereafter the defendants should have kept the shaft in motion) to accomplish it, their engine must have been made to run, and to completely give to the plaintiffs what they sought would have required that all the means necessary, including fuel, repairs upon the engine, and proper connections between the engine and main shaft should have been maintained.
We think a remedy in damages is much more clearly adequate than the remedy sought in this action.
In the case of Manhattan Manufacturing Co. v. Stockyard Co. supra, stress is laid upon the fact that if redress were to be sought at law, it would necessitate a multiplicity of actions. But that would not be true in this case, because it is settled in Ohio that for the violation of such a contract as this, a single action for damages is sufficient. See Steinau v. Gas Co., supra, and James v. Allen Co., 44 Ohio St., 226.
Our conclusion, therefore, is that no error was committed by the court, in the order complained of, and the judgment is : affirmed.